IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARL F. SPURLOCK, | ) | CASE NO. 3:12-CV-02446 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION,[1] | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Carl F. Spurlock ("Plaintiff") seeks judicial review of the final decision of

Defendant Commissioner of Social Security ("Commissioner") denying his applications for

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act), 42

U.S.C. §§ 416(i) and 423, and Supplemental Security Income ("SSI") under Title XVI of the

Act, 42 U.S.C. § 1381 et seq.  ECF Doc. 1.  This Court has jurisdiction pursuant to 42 U.S.C. §

405(g).  This matter has been referred to the undersigned Magistrate Judge for a Report and

Recommendation pursuant to Local Rule 72.2(b)(1).

Plaintiff asserts that the Administrative Law Judge's ("ALJ") failure to obtain Plaintiff's

prison medical records that were reasonably necessary for the full presentation of the case

warrants a reversal and remand.  ECF Doc. 16, p. 2.  For the following reasons, the undersigned

agrees with Plaintiff and concludes that the ALJ failed to fully and fairly develop the record.

Accordingly, the undersigned recommends that the Commissioner's decision be **REVERSED**

**and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings

consistent with this Report and Recommendation.

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013.  Pursuant to FED. R. CIV. P. 25(d), she is hereby substituted for Michael J. Astrue as the Defendant in this case.

## I.  Procedural History

On June 15, 2009, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Social Security Income.  Tr. 50-53.  Plaintiff alleged a disability onset date of May 29, 2009.  Tr. 101, 109.  He alleged disability based on a seizure disorder and deep venous thrombosis.  Tr. 134.  Plaintiff's claims for DIB and SSI were denied on August 4, 2009 (Tr. 54-60), and Plaintiff's request for reconsideration was denied on March 17, 2010 (Tr. 64-69).  Plaintiff requested a hearing by an ALJ on April 26, 2010 (Tr. 72-73), and, on May 4, 2011, Administrative Law Judge Jerry Faust conducted a hearing.  Tr. 27-49.

On July 11, 2011, the ALJ issued a decision finding that Plaintiff was not disabled.  Tr. 21.  Plaintiff requested review of the ALJ's decision by the Appeals Council.  Tr. 4-6.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-3.

## II. Evidence

### A.  Personal and Vocational Evidence

Plaintiff was born on January 10, 1965.  Tr. 141.  He has a high school education (Tr. 139) and lives with his family (Tr. 179).  Plaintiff states that he is afraid to leave his house alone because of seizures and that he receives assistance from his ex-wife when he leaves the house to go shopping.  Tr. 182.  Plaintiff generally stays home, watches television, and does not help with chores around the house.  Tr. 187.  Plaintiff also needs assistance from his ex-wife to help pay bills and attend appointments.  Tr. 187.

According to Plaintiff, he last worked full time from January to December 2008 as a line worker at Whirlpool Corp.  Tr. 199.  From March 2004 to March 2008 he worked at Sypris

Technologies as a machinist. Tr. 199. From 2001 to 2003 he worked at Ohio Galvanizing Corporation and in 2001 he also worked at Liberty Casting. Tr. 199.

At the time of the administrative hearing in May 2011, Plaintiff was incarcerated at North Central Correctional Institution (NCCI), in Marion, Ohio. Tr. 32.

## B. Testimonial Evidence

### 1. Spurlock's Testimony

Spurlock was not represented by counsel at the administrative hearing on May 4, 2011.[2] Tr. 30. The ALJ explained to Plaintiff his right to representation. Tr. 30. Plaintiff elected to proceed without counsel. Tr. 30. At the administrative hearing, when the ALJ asked Plaintiff whether or not he had received a copy of the exhibits, Plaintiff stated that he had not.[3] Tr. 31. Spurlock indicated that he had been in prison at NCCI since 2010, and was serving a four-year sentence. Tr. 33. During the hearing, Plaintiff explained his employment history, noting that his most recent employment was the previous year, with Whirlpool. Tr. 34-35. Plaintiff testified regarding other employment. Tr. 35-36. Plaintiff seemed unsure as to whether or not he was fired or laid off from each of the jobs. Tr. 35-36.

Plaintiff also discussed his medical conditions, the treatment he received, and why he was unable to work. Tr. 35-40, 42. Plaintiff indicated that he was unable to work because of seizures, a condition he had experienced since he was young. Tr. 36. Plaintiff claimed that, at one point, a seizure caused him to lose control of his car and crash into a nursing home. Tr. 36. Also, Plaintiff has suffered injuries as a result of seizures, including burns to his leg, loss of

---

[2] Prior to the hearing, Plaintiff was represented by counsel. However, Plaintiff's counsel withdrew on April 1, 2011. Tr. 74.

[3] ALJ: Well, first, the Social Security Administration's marked the Exhibits in this case, and did they send you a CD of the Exhibits?
CLMT: No.
Tr. 31.

teeth, injured fingers and a sprained knee.  Tr. 37-38.  Further, although Plaintiff claimed to be taking medication to control the seizures, he stated that the medication was ineffective and his seizures occurred on a weekly basis:

Q        Okay.  Do you take any medication for your seizures?

A        Yes.

Q        Does it help any?

A        No.

Q        Doesn't help?

A        I'm still having seizures.  That's the State's record here with the facility.

Q        You get the medication there at the facility?

A        Yes, and they give it to me, because they thought I wasn't taking it because I was having seizures.  And, they started giving it to me, and I'm still having seizures.

Q        How often do you have a seizure?

A        Once a week or so.

Tr. 36-37.

### 2. Vocational Expert's Testimony

Vocational Expert Steve Rosenthal ("VE") testified at the administrative hearing.  The ALJ provided the VE with a hypothetical description of a person with characteristics and limitations similar to that of Plaintiff.  Tr. 46.  The characteristics included a person who is 44 to 46 years old, has a high school education, similar work experience to Plaintiff, as well as several limitations: the person can never climb ladders, ropes, or scaffolds; cannot do heavy lifting or carrying; must avoid all exposure to hazards such as heights, dangerous machinery, and open water; cannot do commercial driving; must avoid hazards that could cause serious bleeding; is

limited to simple, routine tasks and a static environment; no fast paced production; can only have occasional contact with co-workers and supervisors and no contact with the public.  Tr. 46.  The ALJ then asked whether such a person would be able to do Plaintiff's past relevant work.  Tr. 46.  The VE responded that such an individual could not perform Plaintiff's past relevant work.  Tr. 46.  The ALJ then asked if there would be other jobs available to such a person (Tr. 47), and the VE provided three examples: retail marker; garment sorter; and folder.  Tr. 47.  The ALJ went on to ask whether a hypothetical individual, who experiences a seizure once a week, could perform the three stated jobs.  Tr. 48.  The VE responded no and further stated that, if seizures occurred more than every couple of months, a lot of jobs would be eliminated.  Tr. 48.

### 3.  Spurlock's Prison Medical Records

As noted above, during the administrative hearing, Plaintiff testified that he was having seizures on a weekly basis while incarcerated, even though prison personnel administered his medication.  Tr. 36-37.  Following that testimony, the ALJ realized that he was missing six to seven months of medical records regarding Plaintiff's care during his incarceration.  Tr. 42.  The following exchange occurred between the ALJ and Plaintiff regarding Plaintiff's prison medical records:

Q  All right.  Now, -- and, I also have your last – additional seven pages, going through April, 2010.  Did you see him [Dr. Aurora] after April, 2010.

A  No.  Was that in there?

Q  How long've you been there [in prison]?

A  Seven – six, seven months, since September of last year.

Q  Okay.  Have you been getting medical care in there?

A  Yes.

Q   Okay.  I'm going to have to send for those records, I think.  I might have to send for a

release from you first, for you – for your permission, so it might take awhile.

A   Okay.

Q   I need to look – because it looks like the most recent medical I have is a year old, Dr.

Aurora.  And, you don't think you've seen him since April of 2010?

A   No, because I've been in here [in prison].

Tr. 42-43.

Following the hearing, the Social Security Administration (SSA) made attempts to obtain

the medical records.  Tr. 202.  The first attempt was made on May 6, 2011, with a letter of

request sent to NCCI where Plaintiff was incarcerated. [4]  Tr. 202, 730.  On May 18, 2011, NCCI

sent a response to the SSA case manager.[5]  Tr. 202, 734.  NCCI's response only states Plaintiff's

release date and inmate number.  Tr. 202, 734.  On May 23, 2011, the SSA case manager made a

phone call to the prison and spoke with someone in the medical records department.  Tr. 202.

The case manager was directed to another prison employee and the case manager left a

voicemail.  Tr. 202.  On May 31, 2011, the case manager called the prison, was referred to

another prison employee, and left a new voicemail inquiring into the time frame for sending

Plaintiff's medical records to the ALJ.  Tr. 202.  Finally, on May 31, 2011, the SSA sent a

second request to Plaintiff's prison facility.  Tr. 202, Tr. 730, Tr. 734.  That same day, a

representative of the prison called the SSA case manager and told her that prison policy

permitted release of medical records only within six months of a prisoner being released from

---

[4] Attached to the request is a copy of an authorization to disclose information to the SSA signed by the Plaintiff.  Tr.
733.  However, the signed authorization is dated March 2, 2011, which is before the May 4, 2011 administrative
hearing.  Tr. 733.  As a result, it is unclear whether this is the authorization to obtain the prison medical records
discussed by the ALJ during the hearing.  Tr. 42-43.

[5] Although NCCI responded, the SSA case manager incorrectly addressed the request for Plaintiff's prison medical
records to NCCI in Marion, Illinois, rather than Marion, Ohio, where Plaintiff was incarcerated at the time.  Tr. 202,
730, 735.

custody and Plaintiff was not scheduled for release until 2014.  Tr. 202.  The post-hearing development of the case was then closed and returned to the ALJ for review.  Tr. 202.  In a memo to the ALJ dated June 1, 2011, the case manager detailed her efforts to obtain Plaintiff's prison medical records.  Tr. 202.  The case manager concluded by asking the ALJ, "If this is insufficient evidence to demonstrate our efforts to obtain the claimant's medical records, please let me know."  Tr. 202.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1.   If the claimant is doing substantial gainful activity, he is not disabled.

2.   If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.   If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a

listed impairment, claimant is presumed disabled without further inquiry.

4.      If the impairment does not meet or equal a listed impairment, the ALJ
        must assess the claimant's residual functional capacity and use it to
        determine if claimant's impairment prevents him from doing past relevant
        work.  If claimant's impairment does not prevent him from doing his past
        relevant work, he is not disabled.

5.      If claimant is unable to perform past relevant work, he is not disabled if,
        based on his vocational factors and residual functional capacity, he is
        capable of performing other work that exists in significant numbers in the
        national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d

119, 107 S. Ct. 2287 (1987).  Under this sequential analysis, the claimant has the burden of proof

at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

The burden shifts to the Commissioner at Step Five to establish whether the claimant has the

Residual Functional Capacity ("RFC") and vocational factors to perform work available in the

national economy.  *Id.*

## IV. The ALJ's Decision

In his July 11, 2011, decision, the ALJ made the following findings:

1.      The claimant meets the insured status requirements of the Social Security
        Act through December 31, 2013.  Tr. 12.

2.      The claimant has not engaged in substantial gainful activity since May
        29, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et
        seq.*).  Tr. 12.

3.      The claimant has the following severe impairments: seizure disorder,
        borderline intellectual functioning, and depression (20 CFR 404.1520(c)
        and 416.920(c)).  Tr. 12.

4.      The claimant does not have an impairment or combination of
        impairments that meets or medically equals a Listing.[6]  Tr. 13.

---

[6] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P,
App. 1, and describes impairments for each of the major body systems that the Social Security Administration
considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age,
education, or work experience.  20 C.F.R. § 404.1525.

5.      After careful consideration of the entire record, the undersigned finds that
        the claimant has the residual functional capacity ("RFC") to perform light
        work as defined in 20 CFR 404.1567(b) and 416.967(b) except the
        claimant can never climb ladders, ropes, or scaffolds; must avoid all
        hazards, dangerous machinery, open water; cannot do commercial
        driving; must avoid hazards that could cause serious bleeding; is limited
        to simple, routine tasks in a static environment; no fast-pace production;
        only occasional contact with superiors or coworkers; and no contact with
        the public.  Tr. 16.

6.      The claimant is unable to perform any past relevant work (20 CFR
        404.1565 and 416.965).  Tr. 19.

7.      The claimant was born on January 10, 1965 and was 44 years old, which
        is defined as a younger individual age 18-49, on the alleged disability
        onset date (20 CFR 404.1563 and 416.963).  Tr. 20.

8.      The claimant has at least a high school education and is able to
        communicate in English (20 CFR 404.1564 and 416.964).  Tr. 20.

9.      Transferability of job skills is not an issue in this case (20 CFR 404.1568
        and 416.968).  Tr. 20.

10.     Considering the claimant's age, education, work experience, and residual
        functional capacity there are jobs that exist in significant numbers in the
        national economy that the claimant can perform (20 CFR 404.1569,
        404.1569(a), 416.969, and 416.969(a)).  Tr. 20.

Based on the foregoing, the ALJ determined that Plaintiff had not been disabled from

May 29, 2009, through the date of his decision.  Tr. 21.

## V. Parties' Arguments

### A.      Plaintiff's Arguments

Plaintiff argues that the ALJ did not fully and fairly develop the record because he failed

to exhaust all available means to obtain Plaintiff's prison medical records.[7]  Doc. 14, p. 2.  As a

result of the ALJ's failure to obtain Plaintiff's prison medical records, Plaintiff alleges that the

ALJ failed to meet the requirements of his heightened duty to scrupulously and conscientiously

---

[7] Plaintiff also contends that it was impossible for him to obtain his prison medical records on his own.  ECF Doc.
16, p. 2.

probe for all facts because there were known inconsistencies resolvable by such records.  ECF Doc. 14, p. 12.  Additionally, Plaintiff contends that the ALJ neglected to consider and weigh all of the medical opinion evidence of record, namely the medical opinion of Dr. McIntyre.  ECF Doc. 14, p. 17.  Plaintiff requests that this Court reverse the ALJ's decision and require payment of benefits as of the alleged disability onset date.  ECF Doc. 14, p. 20.  Alternatively, Plaintiff requests that the Court reverse and remand the ALJ's decision for further proceedings.  ECF Doc. 14, p. 20.

### B.    Defendant's Arguments

The Commissioner asserts that substantial evidence supports the ALJ's decision and Plaintiff failed to meet his burden of proving that he was disabled under the Act.  ECF Doc. 15, p. 11.  The Commissioner contends that the ALJ properly developed the record, arguing that the ALJ made all reasonable efforts to obtain Plaintiff's prison medical records and that there was sufficient evidence in the record to show that Plaintiff was not disabled.  ECF Doc. 15, pp. 11-12.  Finally, Defendant contends that the ALJ did consider all appropriate medical opinion evidence, even if he did not consider or give as much weight to Dr. McIntyre's opinion as he did to others.  ECF Doc. 15, p. 16.

### VI. Law & Analysis

### A.    Standard of Review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (*per curiam*)).  The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).  Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  Accordingly, a court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### B.     Remand is appropriate in this case because the ALJ failed to fully and fairly develop the record

Plaintiff argues that the ALJ failed to adequately develop the record because he did not obtain medical records from the North Central Correctional Institution in Marion, Ohio, for the period of Plaintiff's incarceration.  ECF Doc. 14, p. 2.  This argument has merit.

"Social security proceedings, unlike judicial ones, are inquisitorial, not adversarial." *Wright–Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 397 (6th Cir. 2010) (White, J., concurring) (citing *Sims v. Apfel*, 530 U.S. 103, 110–11, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000).  In general, "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)).  However, "special circumstances" exist "when a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures . . . ." *Wilson v. Comm'r Soc. Sec.*, 280 Fed. App'x 456, 459 (6th Cir. 2008) (citing *Lashley v. Sec'y*

11

*Health & Human Servs.*, 708 F.2d 1048, 1051–52 (6th Cir. 1983)). In such a case, "an ALJ has a special, heightened duty to develop the record." Id. "To satisfy this special duty," the Sixth Circuit instructs, "the administrative law judge must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Lashley*, 708 F.2d at 1052 (internal citations and quotation marks omitted) (quoting *Gold v. Sec'y of Health, Educ. & Welfare*, 463 F.2d 38, 43 (2d Cir. 1972)); *But see Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1171 (6th Cir., 1990) (the court held that the "Secretary did not fail in his duty to fully and fairly develop the record" where there was no contradictory evidence of the alleged disability that had to be resolved by the ALJ and the claimant did not present other evidence that might prove a disability.).

### 1. The ALJ had a Heightened Duty to Develop the Record

The special circumstances recognized in *Wilson* are present here. Plaintiff was not represented by counsel at the administrative hearing and, upon review of the hearing transcript, it is evident that he was unfamiliar with certain procedural aspects and it is not clear that Plaintiff was capable of presenting an effective case. Plaintiff did not receive copies of the exhibits used in the case (Tr. 31), nor did Plaintiff have copies of his medical records from NCCI, where he was being held during the hearing (Tr. 42-43). At certain points, Plaintiff appeared unable to answer apparently simple questions.[8] Further, not only was Plaintiff *pro se* at the administrative hearing but the ALJ also found that Plaintiff has severe impairments, including seizure disorder,

---

[8] Plaintiff could not answer basic questions or appeared to be confused when answering questions regarding his height (Tr. 33), why he lost his driver's license (Tr. 33), whether he is right or left handed (Tr. 33), and why he was asked to leave previous jobs. Tr. 35.

borderline intellectual functioning, and depression.  Tr. 12.  Based on the foregoing, the

undersigned finds that the ALJ had a heightened duty to fully and fairly develop the record.

### 2.     The ALJ Failed to Meet his Heightened Duty and Accordingly Failed to Develop the Record

The ALJ failed to meet his heightened duty when he did not obtain Plaintiff's medical

records for the time period that Plaintiff was incarcerated.  During the hearing, the ALJ indicated

that he would obtain the missing medical records, i.e., the records covering the time period

during which Plaintiff was incarcerated up to the date of the hearing on May 4, 2011.[9]  Tr. 43.

Thus, the ALJ recognized that the missing records were relevant to the disability determination.

However, the ALJ failed to obtain the missing medical records.

ALJs not only have the ability to issue subpoenas at the request of a claimant but can also

do so on their own motion.  For example, "the ALJ must issue a subpoena when an individual

has evidence or can offer testimony that the ALJ determines is reasonably necessary for the full

presentation of the case, and the ALJ has exhausted other means of obtaining this evidence or

testimony." *Social Security Administration, Hearing, Appeals, and Litigation Law Manual*

(HALLEX), I-2-5-78 (2005).  Not only did Plaintiff testify at his administrative hearing that the

prison medical records would show he was having weekly seizures while on anti-seizure

medication but the ALJ also acknowledged that he would need to send for those records.  Tr. 43.

According to *Hawkins v. Chater*, ALJs are not required to "exhaust every possible line of inquiry

in an attempt to pursue every potential line of questioning.  The standard is one of reasonable

good judgment."  *Hawkins v. Chater*, 113 F.3d 1162 (10th Cir. 1997).  In this case the ALJ

requested Plaintiff's prison medical records through written requests as well as contacting the

---

[9] While neither party raised the issue, page 23 of the transcript of Plaintiff's hearing appears to be missing.  Tr. 27-49.  Based on the contents in the pages immediately preceding and following the missing page (Tr. 48-49), the missing page may contain additional statements regarding what steps the ALJ intended to take to obtain Plaintiff's missing prison medical records and/or the relevance of those records.

prison by phone but failed to utilize his subpoena power.  Tr. 202.  For the ALJ to issue a subpoena would have been in keeping with the standard of reasonable good judgment since the ALJ, of his own accord at the administrative hearing, questioned the VE concerning Plaintiff's ability to conduct even light exertional work if Plaintiff suffered from weekly seizures (Tr. 48) and indicated he would obtain the prison medical records.  Tr. 43.  This line of questioning shows the level of importance the ALJ himself assigned to Plaintiff's testimony regarding his weekly seizures and demonstrates why it would have been reasonable for the ALJ to make further efforts to obtain Plaintiff's prison medical records, including by issuing a subpoena.  By not doing so, the ALJ failed to meet his heightened duty.

The Commissioner argues that the ALJ had no obligation to issue a subpoena because sufficient evidence existed in the record to find that Plaintiff was not disabled, citing *Thomas v. Barnhart*, 278 F.3d 947, 958 (3d. Cir. 2002) ("The requirements for additional information is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability.").  ECF Doc. 15, p. 12.  However, the ALJ acknowledged that he should acquire Plaintiff's prison medical records, questioned Plaintiff's credibility regarding the frequency of his seizures and compliance with physician orders regarding medication, drug and alcohol use, and questioned the VE on the impact that weekly seizures would have on Plaintiff's ability to work.  These are matters that the prison records would have shed light on, indicating that the evidence relied on by the ALJ in making his decision was insufficient.

Because Plaintiff had only been incarcerated for six to seven months at the time of the administrative hearing, the Commissioner also argues that obtaining Plaintiff's prison medical records, which might have corroborated Plaintiff's testimony that he had weekly seizures despite

14

taking his medication, would not have been sufficient to demonstrate that Plaintiff's impairment lasted 12 months, as required by the Act.  ECF Doc. 15, p. 15.  However, the prison records may have substantiated Plaintiff's statements that, even when compliant with seizure medication, he continued to have weekly seizures.  That would contradict the ALJ's finding that Plaintiff's allegations of the debilitating nature of his seizures was undermined by the infrequency of his seizures, his noncompliance with treatment recommendations for his seizures and his drug and alcohol abuse during the relevant period.  Tr. 17-18.  Thus, the prison medical records are relevant in light of the ALJ's finding that Plaintiff's statements were not entirely credible (Tr. 17), even though the records do not cover a full 12-month period.

The ALJ's failure to obtain Plaintiff's prison medical records was prejudicial to Plaintiff because the VE testified that no work would be available to an individual who experienced seizures once a week and the prison medical records would have shown whether Plaintiff experienced seizures that frequently and whether Plaintiff was compliant with his medication. Accordingly, for the reasons set forth herein, this case should be remanded to ensure that Plaintiff's claims are fairly and completely adjudicated based on a sufficient record.  See, e.g., *Miksch v. Massanari*, 18 Fed. App'x. 632, 634 (9th Cir. 2001) (holding that ALJs have "an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered").

### C.    Other Issues

The undersigned will not address Plaintiff's remaining arguments because, on remand, the ALJ's evaluation of the additional medical records from Plaintiff's period of incarceration may affect his findings under the sequential disability evaluation.  See *Trent v. Astrue*, Case No. 1:09CV2680, 2011 U.S. Dist. LEXIS 23331, at *19 (declining to address the plaintiff's

remaining assertion of error because remand was already required and, on remand, the ALJ's application of the treating physician rule might impact his findings under the sequential disability evaluation).

### VII. Conclusion and Recommendation

For the foregoing reasons, the final decision of the Commissioner denying Plaintiff Carl F. Spurlock's applications for SSI and DIB **should be REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

Dated:  July 3, 2013

_____
Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).